IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRACIE FRANK,<br><br>    **Plaintiff,**<br><br>    v.<br><br>HEARTLAND REHABILITATION HOSPITAL, LLC,<br><br>    **Defendant.** | Case No. 2:20-cv-02496-HLT-KGG |

**MEMORANDUM AND ORDER**

Plaintiff Tracie Frank brings Title VII sexual harassment and retaliation claims against her former employer. Doc. 1. Defendant Heartland Rehabilitation Hospital, LLC moves for summary judgment. Doc. 37. Because Plaintiff fails to show that she was subjected to severe and pervasive conduct sufficient to create a hostile work environment and fails to make a prima facie case for retaliation, the Court grants Defendant's motion for summary judgment.[1]

**I.    BACKGROUND**[2]

Plaintiff worked for Defendant from June 2018 to September 13, 2019. Doc. 38 at 7, ¶ 1. Plaintiff worked as an executive assistant to Chief Nursing Officer Alicia Sorensen. *Id.* at 7, ¶¶ 2-3. Sorenson hired Plaintiff and was her direct supervisor. *Id.* at 7, ¶ 4. In April 2019, Sorenson presented Plaintiff with a "Last Chance Agreement" that outlined job expectations that she

---

[1]    Plaintiff moves for leave to file a surreply. Doc. 48. Defendant opposes the motion. Doc. 50. Surreplies are disfavored. *See, e.g.*, *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 2020 WL 4904049, at *1 (D. Kan. 2020). Plaintiff seeks leave to argue against Defendant's hearsay arguments. Doc. 48 at 2. But the hearsay arguments stem from evidence Plaintiff offered to support her factual positions. It is her burden to present appropriate evidence to support her factual positions. And Defendant does not raise a new argument by simply pointing out problems with that evidence. This is not a rare circumstance justifying a surreply, so the Court denies the motion.

[2]    The Court relies on undisputed facts and construes any disputed facts in the non-moving party's favor. Additional facts are included throughout the order.

perceived Plaintiff was failing to meet, such as making errors leading to inaccurate expense reports and failing to make appropriate staffing decisions. *Id.* at 8, ¶¶ 8-9. Plaintiff believed the document was inaccurate and exaggerated. Doc. 41 at 5, ¶ 8. By July 2019, Plaintiff told Sorenson that she was looking for a new job. *Id.* at 5, ¶ 10. On August 30, 2019, Sorenson told Plaintiff that she could not keep her job open-ended, and she gave Plaintiff until September 13 to find another job, or else she would be terminated. *See id.* at 6-7, ¶¶ 13, 15. Plaintiff had secured a job with another organization at that point. *Id.* at 9, ¶ 16. That same day, August 30, Plaintiff submitted her resignation letter and her two-weeks' notice. Doc. 38 at 9, ¶¶ 15-16.

During Plaintiff's short time working for Defendant, Adriel Robinson was Defendant's Director of Quality Management. *Id.* at 8, ¶ 6. Robinson is African American. Doc. 41 at 17, ¶ 13. Robinson was not Plaintiff's supervisor. *See* Doc. 38 at 7, ¶¶ 2, 4. Robinson's office was next to Plaintiff's. Doc. 41 at 16, ¶6. From April 2019 to August 2019, Robinson made the following comments to Plaintiff: (1) called a date Plaintiff mentioned "a dick meeting;" (2) said "you can't miss those bad boys" about Plaintiff's breasts; (3) asked whether Plaintiff had ever received any responses on dating apps from "black dudes;" and (4) told Plaintiff that "firemen are only out for one thing." Doc. 38 at 9-10, ¶ 20. Additionally, on five to seven occasions Robinson said things to Plaintiff like "I like your shirt today" while looking her up and down. Doc. 41 at 27, ¶ 76; *see also* Doc. 38 at 10, ¶ 20. Plaintiff's coworker, Cheryl Morrison, witnessed the "dick meeting" and "firemen" comments and the up-and-down looks. Doc. 41 at 27, ¶¶ 75-76. Robinson would also frequently look at Plaintiff and tell her how nice she looked. Doc. 41 at 17, ¶ 12. After the "dick meeting" comment occurred in April 2019, Plaintiff started feeling very uncomfortable around Robinson. *Id.* at 16, ¶ 7. Plaintiff also claims that she had heard Robinson had harassed other

women, and nothing had been done about it. *Id.* at 18, ¶ 17. Plaintiff kept her office door closed to keep her distance from Robinson. Doc. 38 at 9, ¶ 19.

On August 16, 2019, Plaintiff told Sorenson that she was going to report Robinson to Human Resources. Doc. 41 at 9, ¶ 21. Sorenson supported Plaintiff telling Human Resources about Robinson and said that if something had happened to make Plaintiff uncomfortable, then she should report it. Doc. 38 at 10, ¶¶ 22-23. Plaintiff reported Robinson to Human Resources that day. *Id.* at 10, ¶ 24. Human Resources interviewed Robinson on August 19 (the next business day), and he voluntarily resigned immediately after. *Id.* at 11, ¶¶ 26-27. Plaintiff felt better after reporting Robinson. *Id.* at 11, ¶ 30. She no longer had headaches or was unhappy. *Id.* at 11, ¶ 31. After Plaintiff left Defendant's employment, she filed charges with the Equal Employment Opportunity Commission ("EEOC"), and she filed this lawsuit after receiving her right to sue letter. Doc. 1 at 2, ¶¶ 5-7.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. ANALYSIS

#### A. Sexual Harassment

Plaintiff claims Defendant violated Title VII by subjecting Plaintiff to a hostile work environment based on her sex. Doc. 41 at 30. Defendant initially argues that Plaintiff has not shown that any harassment she experienced was sufficiently severe or pervasive as a matter of law. Doc. 38 at 14. Alternatively, Defendant argues that Plaintiff has not shown that Defendant knew about the sexual harassment and that its response was unreasonable. *Id.* at 20. The Court addresses each argument in turn.

##### 1. No reasonable jury could find that Robinson's conduct was sufficiently severe or pervasive.

To overcome summary judgment on a hostile-work-environment claim, a plaintiff must show that (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Id.* at 1252. A plaintiff must, however, "show that the environment was both objectively and subjectively hostile or abusive." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). A court must evaluate the totality of the circumstances and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252 (citation omitted).

The Court will assume for the sake of argument that Plaintiff was harassed because of her sex and focus its analysis on whether that harassment was sufficiently severe or pervasive to warrant trial. Additionally, Plaintiff has presented evidence that she subjectively believed her work

4

environment was hostile. *See, e.g.*, Doc. 41-1 at 87:2-5. So the Court assesses whether a reasonable person would have found the harassment either severe or pervasive.[3]

The Court must examine the totality of the circumstances. The Court first examines whether a reasonable jury could conclude that Plaintiff experienced <u>severe</u> harassment. Plaintiff has not shown that the harassment was severe. There was no tortious conduct or physical contact. *See Morris*, 666 F.3d at 658-59, 668 (holding harassment was not severe despite three separate tortious incidents). Nor was Robinson's behavior physically threatening or humiliating. *See id.* at 666-68. The harassment in this case—inappropriate comments and looks by a single employee—did not involve physical invasion or unwanted contact and falls far short of severe conduct. Under these facts, an objective person would not find the harassment here severe.

The Court second examines whether a reasonable jury could find Robinson's harassment objectively <u>pervasive</u>. Construing all facts in Plaintiff's favor, Robinson made four inappropriate comments, complimented Plaintiff's shirt five to seven times while looking her up and down, and frequently looked at Plaintiff and told her how nice she looked over a four-month period. Plaintiff closed her door while she was at work to stay away from Robinson and suffered from increased headaches due to Robinson's behavior. Thus, the issue boils down to whether Robinson's scattered comments, together with the up-and-down looks and the other looks and compliments, could objectively establish a pervasively hostile environment under the totality of the circumstances.[4]

---

[3] The Court analyzes the severe or pervasive requirements separately because the caselaw repeatedly describes the test in the disjunctive. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" (alteration in original) (citation omitted)). Caselaw has, however, frequently blurred the distinction between the two requirements.

[4] Plaintiff argues in passing that her knowledge that Robinson had harassed other women "heightened her perception of a hostile environment." Doc. 41 at 32. The Court has already assumed that Plaintiff subjectively believed her work environment was hostile. Plaintiff does not develop an argument about how her subjective generalized perceptions, in which she <u>does not claim</u> specific knowledge of any specific prior incident regarding Robinson, would make a reasonable person in her situation also believe the work environment was pervasively hostile. But

Robinson's comments were inappropriate and crude, and the fact that a coworker found some problematic buttresses Plaintiff's argument. But the comments are not particularly graphic and are not soliciting a sexual relationship. At most, these handful of remarks over the course of four months were "mere offensive utterance[s]," *Throupe*, 988 F.3d at 1252, and were simply not the "steady barrage" of opprobrious comments necessary to survive a summary judgment motion. *Morris*, 666 F.3d at 666.

Additionally, Robinson complimented Plaintiff's shirt five to seven times while looking her up and down and frequently looked at Plaintiff and told her how nice she looked. Apart from the five to seven up-and-down looks, Plaintiff does not describe the other looks (apart from a generalized reference to "day-to-day stares") or offer evidence that coworkers found these other looks abusive. Certainly, Plaintiff subjectively found Robinson's conduct unwelcome, but "[l]itigation by perception" alone does not survive summary judgment. *Mendoza v. Borden*, 195 F.3d 1238, 1257 (11th Cir. 1999) (Carnes, J., concurring). Rather, "Title VII requires a baseline of objectively offensive conduct." *Id.* at 1256. To require otherwise would mean that employers could face legal sanctions if their employees ever looked at each other for extended periods of time. *See id.* Here, the record on Robinson's comments, compliments, and looks does not establish objectively pervasive harassment.

Caselaw supports this outcome. In *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997), the Tenth Circuit held that the plaintiff had not experienced severe or pervasive harassment when she had five incidents with an employee-turned-supervisor. *Id.* at 1365-66, 1365 n.5. One of the incidents involved the supervisor looking down the female plaintiff's dress while

---

even if her highly generalized second-hand knowledge is considered as part of the totality of the circumstances, it does not change the outcome of this motion.

he was a guest at her wedding and saying "well, you got to get it when you can." *Id.* at 1366. The plaintiff was so embarrassed that she did not tell her husband for a couple weeks. *Id.* Similarly, the Eleventh Circuit found that harassment was not severe or pervasive when there was

> (1) one instance in which [a male supervisor] said to [the female plaintiff] "I'm getting fired up"; (2) one occasion in which [the supervisor] rubbed his hip against [the plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [the supervisor] made a sniffing sound while looking at [the plaintiff's] groin area and one instance of sniffing without looking at her groin; and (4) [the supervisor's] "constant" following and staring at [the plaintiff] in a "very obvious fashion."

*Mendoza*, 195 F.3d at 1247 (majority opinion) (emphasis added). The Eleventh Circuit held that the constant stares did not elevate the totality of the conduct to a pervasively hostile work environment, in part because the plaintiff never described the supervisor's following or staring as "'stalking' or 'leering' or 'intimidating' or 'threatening.'" *Id.* at 1249.

Similarly, the Court looks to the Tenth Circuit's binding authority in *Morris*. There, the Tenth Circuit affirmed summary judgment for the defendant on a Title VII sexual harassment claim. 666 F.3d at 658. The female plaintiff was a nurse who worked on a hospital's heart surgery team from 2007 to 2008. *Id.* at 658-59. In June 2008, a male doctor hit her on the head twice within a two-week period by "flicking her with his finger without her permission." *Id.* at 658. Then, in August 2008, the plaintiff was assisting the doctor with a pericardiectomy when the doctor removed pericardium tissue and threw it in her direction. *Id.* The tissue hit the plaintiff's leg. *Id.* at 658-59. The plaintiff reported the pericardium incident to her direct supervisor, which led to the doctor being removed from the operating room for a period and a requirement for all heart surgery team members to participate in a team-building program. *Id.* at 659. The doctor and the plaintiff participated in the training and worked together for about three more months. *Id.* Then the plaintiff filed suit against the hospital and was removed from the heart surgery team in December 2008. *Id.*

7

The Tenth Circuit held that under the totality of the circumstances, the harassment was not sufficiently pervasive to establish liability under Title VII. *Id.* at 665. The plaintiff argued that the harassment must be considered in the context of her allegations that the doctor would also yell at her and demean her work. *Id.* The Tenth Circuit was unpersuaded, however, because "[a] plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of . . . sporadic . . . slurs . . . . Instead, there must be a steady barrage of opprobrious . . . comments.'" *Id.* at 666 (omissions in original) (citation omitted). Furthermore, the Tenth Circuit held that the isolated incidents in that case could not be deemed severe. *Id.* In contrast to cases that involved instances of sexual assault, the doctor's behavior did not objectively alter the terms and conditions of the plaintiff's employment. *Id.* at 666-68. In the surgical context, a reasonable worker would be unlikely to consider contact with human biological products as threatening or severe. *Id.* at 668.

In contrast, the Tenth Circuit held in *Sanderson v. Wyoming Highway Patrol* that a reasonable jury could find sexual harassment was severe or pervasive when a female police officer was subjected to persistent rumors that she was sexually promiscuous. 976 F.3d 1164, 1177 (10th Cir. 2020). Specifically, over the course of several years (and a promotion to a different division), multiple colleagues had routinely spread rumors that the plaintiff had sex with her colleagues and supervisors and that she used sex to gain favors at work. *Id.* at 1168-70, 1177. These rumors were accompanied with sex-neutral harassment, such as ignoring Plaintiff's greetings and questions and a colleague bringing breakfast for everyone on the team except her. *Id.* at 1169, 1177.

Here, much of Plaintiff's evidence (particularly about looks) is vague. And, regardless, Plaintiff's evidence is weaker than the evidence in *Mendoza*. Robinson was not Plaintiff's supervisor, and there is no evidence that his conduct changed her relationship with her supervisor

8

or her ability to approach her supervisor about work-related issues. There is also no evidence that Robinson and Plaintiff attended meetings together or performed joint tasks together such that his conduct affected her ability to process information or perform specific job tasks. *See* Doc. 41 at 33 (suggesting there was no business reason for Robinson to talk to Plaintiff). Instead, Plaintiff could close her office door to minimize contact with Robinson. While Plaintiff claims that Robinson made a handful of inappropriate comments, looked her up and down five to seven times, and frequently complimented her and looked at her, there is nothing about these comments or looks that indicate that they raised Plaintiff's working conditions to the level of a pervasively hostile work environment. *Cf., e.g.*, *EEOC v. Mediacom Commc'ns Corp.*, 2021 WL 1011897, at *16 (M.D. Ga. 2021) (holding genuine issue of fact as to pervasiveness where employees all worked in one large room and coworker regularly stared at the plaintiffs and repeatedly stalked them in the parking lot).

Additionally, this case is like *Morris*. Both plaintiffs worked at their relevant positions for a relatively short time. Both women were subjected to inappropriate conduct over the course of a few months. The nurse in *Morris* experienced three instances of battery against the backdrop of being yelled at and demeaned. Here, in the light most favorable to Plaintiff, Robinson made several innuendo-laced comments over a four-month period against the backdrop of seven looks, undescribed frequent looks, and repeated compliments about her clothing. *See* Doc. 41 at 31-32; Doc. 38 at 9-10, ¶ 20. Like *Morris*, this conduct is not objectively severe or pervasive. Finally, this case is not like *Sanderson*. There, the plaintiff was routinely subjected to humiliating rumors by multiple colleagues in multiple divisions of the Wyoming Highway Patrol. The behavior by a single employee in this case pales in comparison. Therefore, Defendant is entitled to summary

judgment on Plaintiff's sexual harassment claim because no reasonable jury could find severe or pervasive harassment.[5]

### 2. No reasonable jury could find that Defendant knew about the sexual harassment and that its response was unreasonable.

Defendant alternatively argues that it is entitled to summary judgment because no reasonable jury could find that it knew about Robinson's sexual harassment and unreasonably responded to it. Doc. 38 at 20-23. Plaintiff counters by arguing that Defendant was negligent in responding to Robinson's harassment of Plaintiff because it had notice of Robinson's past behavior with other employees. Doc. 41 at 34-36. The parties vigorously dispute whether various evidence of Robinson's prior conduct is in a form that would be admissible at trial. For purposes of the motion for summary judgment, the Court assumes without deciding that all disputed evidence about Robinson's prior conduct is admissible.

Unless a harasser is a supervisor, a plaintiff "must show that the [defendant] had actual or constructive notice of the harassment and negligently failed to remedy or prevent it." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 755 (10th Cir. 2014) (citation omitted). An employer's knowledge that the harasser had harassed other people could show constructive notice. *Id.* at 755-

---

[5] Several other cases support this outcome. *See, e.g.*, *Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1027-28 (11th Cir. 2008) (holding that comments by supervisor that the plaintiff was hot and needed to wear tighter clothes, made weekly over 8-week period, were not severe or pervasive); *Singleton v. Dep't of Corr. Educ.*, 115 F. App'x 119, 120, 123 (4th Cir. 2004) (finding no actionable harassment when the plaintiff complained that her co-worker, among other things, "insistently complimented" her, stared at her breasts when he spoke to her, and "constantly" told her how attractive he found her); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 787, 790 (6th Cir. 2000) (finding the plaintiff did not present sufficient evidence to survive summary judgment when the harasser told the plaintiff several inappropriate jokes, made a verbal sexual advance, referred to the plaintiff as "Hot Lips," and made "isolated comments about [her] state of dress"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 458-59, 464 (6th Cir. 2000) (concluding no severe or pervasive harassment despite three instances of physically invasive conduct, including a supervisor grabbing the plaintiff's buttocks and saying that "she controlled [the plaintiff's] ass and she would do whatever she wanted with it," coupled with repeated unwanted sexual advances); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (finding no actionable harassment where supervisor made at least nine suggestive comments, such as calling the plaintiff "pretty girl," and grunted when she wore a leather skirt over a nine-month period); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 87-88, 97-99 (D.D.C. 2007) (finding no actionable harassment when supervisor touched the plaintiff's buttock and thigh, tried to kiss her, called her beautiful, asked her to accompany him on a weekend trip, and stared at her often).

66 (explaining "dangerous employee" liability theory). But the extent and seriousness of the prior harassment and the similarity and nearness in time to the later harassment are factors in deciding whether to allow the evidence of harassment of others to prove notice. *Id.* at 756. Finally, a plaintiff must show that an employer's remedy was not reasonably calculated to end the harassment to show that the employer's remedy was inadequate. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998).

Plaintiff does not allege that Robinson was her supervisor. Nor does she allege that Defendant had actual notice of her harassment prior to her telling Sorenson in August 2019 that she was going to report Robinson. Human Resources investigated the report the next business day, and Robinson immediately resigned. Thus, no reasonable jury could conclude that Defendant's remedy was not reasonably calculated to end the harassment once it had actual knowledge. *See id.* ("A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation."). Therefore, Plaintiff must show that Defendant had constructive notice of her harassment prior to her report to survive summary judgment.

Plaintiff seems to argue that Defendant had constructive notice of Robinson's harassment under the dangerous employee theory. *See* Doc. 41 at 34; *see also Kramer*, 743 F.3d at 755. Examining the extent, seriousness, similarity, and nearness in time of Plaintiff's harassment to the prior harassment, no reasonable jury could hold that Defendant had constructive notice. In the light most favorable to Plaintiff, the record contains the following instances of misbehavior by Robinson: (1) In December 2017, a former nursing director filed a charge with the EEOC against the hospital based on the behavior of its Chief Executive Officer. 42-1 at 1, 4. In the EEOC complaint, she alleged that the Chief Executive Officer and Human Resources had not disciplined Robinson for calling her "babe" in a meeting and telling her on one occasion to wear high heels

11

more often because they made her look "more sexy." *Id.* at 4. (2) Fast forwarding to September 2018, the Chief Executive Officer and the Human Resources Director met with Robinson to reprimand him for racially insensitive comments he had made. *See* 38-6 at 3, 10-13. They also admonished him for asking colleagues whether new employees were "hot" and for saying a particular doctor could not do her job because she was pregnant. *Id.* at 3. They told him that, going forward, other infractions would be investigated and could include discipline up to and including termination. *Id.* Robinson completed cultural diversity training after the meeting. *Id.* at 5-9. (3) In February 2019, another employee and Robinson got into a dispute where he accused her of opening and/or tampering with his mail, and she accused him of saying that it was a good thing there was nothing inappropriate in the package. *See id.* at 31-43. The parties disputed whether Robinson used the word "dildo" in the conversation. *Id.* at 33. Defendant investigated the dispute. *Id.* at 31-32. The investigation was inconclusive, and neither side could corroborate their story. *See id.* Defendant added notes to both employees' files. *Id.* at 33-36. (4) Finally, in August 2019, two nurses reported that Robinson refused to help "work the floor" when they were shorthanded. *See id.* at 29-30.

The incident that most closely resembles Plaintiff's is the former nursing director's EEOC charge from 2017. This charge was filed before Plaintiff started her job at Defendant and over a year and a half before Plaintiff reported Robinson. Notably, the nursing director's charge was not directed towards Robinson, and she only accused Robinson of making two inappropriate remarks. Plaintiff does not allege that any other employee contributed to a hostile working environment. Doc. 36 at 3 ("[Plaintiff] alleges that she was subject to sexual harassment . . . by Adriel Robinson."). In the end, Plaintiff has not shown harassment incidents that were "so egregious, numerous, and concentrated as to add up to a campaign of harassment" such that Defendant was

on notice of Robinson's behavior before August 2019. *Jackson v. Kan. City Kan. Pub. Sch. Unified Sch. Dist. No. 500*, 799 F. App'x 586, 591 (10th Cir. 2020) (quoting *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1346 (10th Cir. 1990)). Therefore, the Court alternatively holds that Defendant is entitled to summary judgment because no jury could conclude Defendant responded unreasonably to Plaintiff's internal complaint.

### B. Retaliation

Plaintiff also claims that Defendant violated Title VII by retaliating against her by forcing her out of her job prematurely because she complained about sexual harassment. Doc. 1 at 7. Defendant argues that Plaintiff did not experience an adverse employment action and has failed to establish any causal connection between her employment's end and her protected activity. Doc. 38 at 23, 25. Defendant also argues that Plaintiff has not shown that its reasons for setting a deadline for her departure were a pretext for retaliation. *Id.* at 25; Doc. 47 at 14.

In the absence of direct evidence, a plaintiff must establish a prima facie retaliation case under the *McDonnell Douglas* framework by showing that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 913, 925 (10th Cir. 2016) (citation omitted). "Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant (i.e., employer) to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Id.* (citation omitted).

The parties don't dispute that Plaintiff engaged in protected opposition to discrimination. But they do dispute whether she meets the remaining elements of a prima facie case of retaliation.

13

Plaintiff frames her adverse employment action as "Sorenson's imposition of [an] accelerated deadline" for Plaintiff to leave her job. Doc. 41 at 40. This framing blurs the context that preceded it—namely, Sorenson presenting Plaintiff with the Last Chance Agreement and Plaintiff telling Sorenson that she was looking for work elsewhere. Thus, there are two potential adverse employment actions: (1) the "Last Chance Agreement" that led to Plaintiff seeking other employment; and (2) Sorenson's imposition of a hard deadline for Plaintiff to leave approximately two weeks after her internal complaint.

Regarding the "Last Chance Agreement," even if the Court were to assume it was an adverse employment action, it could not support a prima facie case of retaliation because Plaintiff cannot show a causal link between the agreement and any protected activity. This is because the "Last Chance Agreement" was imposed before Plaintiff engaged in any protected activity. Therefore, the Court focuses on whether Sorenson giving Plaintiff a September 13 termination date on August 30 was a materially adverse action.

Plaintiff had told Sorenson in July she was looking for a new job and already had a new job lined up on August 30. Doc. 41 at 7, ¶ 16. She argues, however, that the accelerated deadline resulted in her being out of work for one week because her new job did not start until a week after her September 13 termination date. *Id.* at 40; *see also* 41-1 at 135:4-137:7. She further argues that had she not been rushed to find a new job, she could have continued looking for a higher-level job. Doc. 41 at 40-41. Notably, Plaintiff does not argue that she was terminated due to her protected activity, nor does she dispute that she was looking for other work and put in her notice after finding a new position. Rather, she only claims that her departure was "hurried." *Id.* at 40.

An adverse employment action is a "significant change in employment status, . . . or a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d

14

620, 635 (10th Cir. 2012) (citation omitted). It is an objective inquiry and not based on a plaintiff's personal feelings. *Id.* at 638. Plaintiff tries to manufacture an adverse employment action by arguing that Defendant's deadline caused her to lose one week's pay. Doc. 41 at 40. Plaintiff points to no evidence in the record to support her argument that she lost a week's pay <u>because of</u> Defendant's deadline. Plaintiff merely directs the Court to her deposition testimony, which indicates that Plaintiff wanted to give a full two weeks' notice. Doc. 41-1 at 137:3-7. Thus, she had to wait an additional week to start her new job, so she could start on a payroll Monday. *Id.* at 134:21-137:2. Plaintiff concedes that she was not required to give a two weeks' notice before leaving Defendant's employ. Doc. 41 at 7, ¶ 17. Furthermore, her speculation that she could have looked for better work had she not been rushed is insufficient to survive a summary-judgment motion. *See, e.g.*, *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").[6] Thus, Plaintiff fails to make a prima facie retaliation case because she did not suffer an adverse employment action when Defendant changed her indefinite departure date to a date certain.

Furthermore, even if Plaintiff had presented a prima facie case, her retaliation claim still fails. Once Plaintiff had established a prima facie case, the burden would shift to Defendant to articulate a legitimate rationale for giving Plaintiff a termination date. Defendant believed that Plaintiff was struggling with her job and knew she was looking for other work. Doc. 47 at 13. Defendant did not want to keep her on indefinitely. *Id.* Sorenson believed that Plaintiff's role was a key one, and that she needed to fill the position. *Id.*; *see also* 41-5 at 53:19-55:18. Replacing a

---

[6] Plaintiff's argument that she was rushed is also somewhat speculative. The parties do not dispute that by July, at the latest, Plaintiff had informed Sorenson that she was looking for other jobs.

struggling employee who wants to leave with a competent employee who wants to stay is a non-discriminatory rationale for giving Plaintiff a date certain to find new employment. Therefore, the burden shifts back to Plaintiff to articulate why Defendant's deadline was pretext for retaliation.

A plaintiff "can establish pretext by showing weaknesses, contradictions, or inconsistencies in [a defendant's] reason[ing] such that a reasonable jury could find [it] unworthy of belief." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 991 (10th Cir. 2021). In examining pretext, it does not matter if a defendant's reasoning was correct. *Id.* The Court cannot second-guess a defendant's business judgment. *Id.*

Here, Plaintiff argues that because Sorensen told Plaintiff that "corporate was putting pressure on her" when she gave Plaintiff the deadline to find other employment, and Defendant has not provided facts as to why corporate was putting pressure on Sorenson, that suggests Defendant's reason for the deadline was pretext. Doc. 41 at 41. Plaintiff misunderstands her burden. Defendant has articulated a legitimate reason for the deadline. It is <u>Plaintiff's</u> burden to show why that deadline was a pretext for retaliation, not just demand more explanation. *See, e.g.*, *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) ("[M]ere conjecture that [the] employer's explanation is a pretext . . . is an insufficient basis for denial of summary judgment." (first two alterations in original) (citation omitted)).

Admittedly, Plaintiff's retaliation argument is not clear. Plaintiff seems to rest her claim entirely on the temporal proximity between her internal complaint about Robinson and getting her deadline from Sorenson. *See* Doc. 41 at 39. In *Morgan*, the Tenth Circuit held that the plaintiff had not shown that her reason for termination was a pretext for retaliation. 108 F.3d at 1324-25. There, the plaintiff received a written warning about her chronic absenteeism in May. *Id.* at 1322. The plaintiff filed a charge with the EEOC in August. *Id.* The plaintiff received another written warning

16

in October. *Id.* The absenteeism continued, and the plaintiff was terminated the following January. *See id.* The Tenth Circuit reasoned that, given that the plaintiff had been warned about her absenteeism both before and after she filed the EEOC charge, the timing of plaintiff's termination "simply completed the disciplinary process already set in motion" and did not support an inference of pretext. *Id.* at 1324.

The same rationale applies here. Plaintiff's departure was set in motion long before she engaged in protected activity. Sorenson gave Plaintiff the Last Chance Agreement <u>months</u> before Plaintiff spoke to her about Robinson. Plaintiff had informed Sorenson that she was looking for another job <u>before</u> she filed her harassment report. And when Plaintiff told Sorenson that she was going to report Robinson, Sorenson <u>encouraged</u> Plaintiff to do so. Under the undisputed facts, there is nothing that a reasonable factfinder could rely on to call into question the stated reason for giving Plaintiff a deadline to find other employment. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.[7]

## IV.  CONCLUSION

The Court finds that Defendant is entitled to summary judgment on both claims.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 37) is GRANTED.

THE COURT FUTHER ORDERS that Plaintiff's Motion for Leave to File Supplemental Legal Memorandum (Doc. 48) is DENIED.

IT IS SO ORDERED.

Dated: February 17, 2022           /s/  *Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE

---

[7] Because the Court finds for Defendant on Plaintiff's retaliation claim, it need not address Defendant's causation argument.

17